IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FRED JAMES FELTON       :
      :
      Appellant,       :       CIVIL ACTION
      :
v.       :       NO. 1:11-CV-3517-TWT-ECS
      :
MICHAEL J. ASTRUE,       :
Commissioner of Social Security :
      :
      Respondent.       :

**FINAL REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff-appellant ("Appellant") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income. This case is before the Court on the administrative record and the parties' pleadings and briefs. For the reasons expressed herein, **IT IS RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED** for further proceedings consistent with this Final Report and Recommendation.

**I.**
**Procedural History**

On March 31, 2009, Appellant protectively filed an application for Supplemental Security Income, alleging a disability due to shoulder and back pain and arthritis, beginning December 30, 2002.

(T. 131, 147).[1] Appellant's claim was denied initially on November 25, 2009, (T. 62), and again upon reconsideration on June 15, 2010. (T. 66). On November 18, 2010, an Administrative Law Judge ("ALJ") held a disability hearing. (T. 32). The ALJ issued a decision on December 17, 2010, finding Appellant not to be disabled. (T. 28). On August 19, 2011, the Appeals Council affirmed the ALJ's decision. (T. 6). On October 27, 2011, Appellant filed a complaint in this Court seeking a review of the Commissioner's decision. [Doc. 3].

## II.
## Factual Background

At the time of the hearing, Appellant was fifty-seven (57) years old. (T. 36). He testified to having an eighth-grade education and no GED. (T. 37). According to his testimony, he last worked approximately ten years before the hearing as an auto mechanic, until pain in his back and shoulder prevented him from continuing that type of work. (T. 37-38). He also has work experience as a janitor and building maintenance repairman. (T. 48, 148).

## A.    Relevant Hearing Testimony

Appellant testified that he is unable to perform any type of work because of his need to make frequent trips to the restroom due to diabetes, and because of pain in his back, shoulder, and leg. (T. 39). He testified that he does take insulin, but that he still

---

[1]    The Administrative Record is abbreviated as "(T. [page])."

2

requires frequent restroom breaks. (Id.). For pain, he said that he takes Motrin and another drug, the name of which he could not remember. (T. 42). He claimed that the medications "sometimes" help alleviate his pain, with no side effects other than feeling "a little dizzy every now and then." (Id.). On a scale of one to ten, Appellant testified that his daily pain level ranges from seven or eight on a day of clear weather to nine or ten if it is cloudy outside. (T. 42-43).

According to Appellant's testimony, he was once married but believes he is now divorced. (T. 36). He is not sure whether the divorce was ever finalized; he currently lives with a friend. (T. 36-37). He said that on a typical day he wakes up, prepares something to eat, and then lies down and takes his medication. (T. 40). He claimed to be unable to help with any household chores, stating that he has not tried since he "fell on [his] face" while attempting to make his bed. (Id.). Because he has never had a driver's license, he relies on his roommate for transportation. (T. 40-41). His roommate also does all the grocery shopping. (T. 41-42). As for social activities, he testified that he never spends time with his children or grandchildren, but that he plays cards or watches television with his roommate. (T. 41). He and his roommate also eat meals together unless she has to work in the evening. (Id.).

With regard to his physical abilities, Appellant testified that walking sometimes increases his pain, as does reaching to "get something out of the cabinet [if] it's too high." (T. 44). He said that he also has trouble bending or stooping, claiming that "sometimes [he] go[es] down there and can't get back up unless [he] use[s] [his] hand on the grass and pull[s] [him]self up." (T. 45). He also testified that, because of the pain in his shoulders, he sometimes has trouble raising one of his arms.[2] (T. 44). He clarified, however, that this was not an "everyday" experience — i.e., that "sometimes it'll go up and be fine." (Id.). Appellant also testified that, because of his back pain, he spends five to six hours between 8:00 a.m. to 5:00 p.m. lying down with his feet elevated. (T. 45-46).

**B.   Diabetes Treatments of Record[3]**

Records from the Grady Health System indicate that Appellant was first diagnosed with diabetes mellitus type 2 on June 14, 2005. (T. 187).

---

[2]   Appellant did not testify as to which arm he sometimes has trouble raising. (T. 44).

[3]   Even though the ALJ found that Appellant also had severe impairments of arthritis, shoulder pain, and degenerative disc disease, the only medical evidence for these conditions in the record is contained in the consultative examiners' reports and the x-rays of Appellant's shoulders and chest. See infra Part II.C.1.

On September 22, 2008, Appellant presented to the Grady Emergency Care Center with chief complaints of heightened blood sugar levels and being out of medication for three days. (T. 183, 185). His blood sugar measured at 257 mg/dl. (T. 183). He was treated and given a prescription for insulin, instructed to follow up with a primary care clinic, and discharged the following morning. (T. 184-85).

On March 24, 2009, Appellant visited the Grady Diabetes Clinic. (T. 187). His HbA1c measured at 12.7%,[4] and the treatment notes indicate that he had been out of insulin for approximately one month. (Id.). Appellant returned for a follow-up three days later, with his HbA1c unchanged. (T. 188). When Appellant returned three weeks later for another follow-up, his HbA1c still registered at 12.7%. (T. 189). Treatment notes from that visit report that Appellant had taken insulin that morning, and they indicate that he had no medications for hypertension. (Id.). He was scheduled to

---

[4]     HbA1c is a blood test used to show how well an individual is controlling his or her diabetes. The number measures one's average level of blood sugar over the preceding three months. An HbA1c of 5.6% or less is considered normal. For a diabetic, a measurement above 7% usually indicates that his or her blood sugar is not well controlled. See A1C Test, Mayo Clinic, http://www.mayoclinic.com/health/a1c-test/MY00142 (last visited Jan. 7, 2012); MedlinePlus, U.S. Nat'l Library of Med., Nat'l Insts. of Health, http://www.nlm.nih.gov/medlineplus/ency/article/003640.htm (last visited Jan. 7, 2012).

AO 72A
(Rev.8/82)

follow-up again in one month, (Id.), but no treatment notes bearing that date appear in the record.

On October 18, 2010, Appellant again reported to Grady with complaints of "bilateral feet pain" and "toe pain." (T. 268, 274, 278, 279). Treatment notes indicate that this was the third time Appellant had run out of pain medication. (T. 273). His blood sugar measured at 330 mg/dl. (T. 279). Appellant was given insulin and Vicodin for his pain. (T. 275). His condition stabilized and he was released the next day. (T. 281-82, 287).

## C.  Opinions Regarding Appellant's Ability to Work

### 1.  Physical Evaluations

On September 21, 2009, Appellant reported to Dr. Ken Sanford for a consultative examination. (T. 199). Appellant complained of daily pain in his lower back, which he said he had experienced ever since a motor vehicle accident crushed his chest in 1979, as well as occasional sharp pain in his right leg. (Id.). He informed Dr. Sanford that he had experienced pain in his shoulders for the past three years, but that it was now gradually getting worse. (Id.). He also reported that he was unable to lift his arms above his head without assistance, that his knees swell at times, and that his right foot was numb. (Id.). Upon his examination, Dr. Sanford noted that Appellant's joints showed no signs of warmth, swelling, deformity, tenderness, or scarring. (T. 200). Dr. Sanford also found

6

that Appellant had a normal gait and noted his ability to get on and off the examination table without difficulty. (Id.). In conclusion, Dr. Sanford found that:

> [Appellant] has uncontrolled diabetes and hypertension due to no medications. He has retinopathy by records provided. He may have alcohol neuropathy along with diabetic neuropathy. He will be limited in pushing, pulling, lifting or carrying. He is at an increased risk for cardiovascular disease or event.

(T. 201).

Four days later, Dr. Eric Udoff, a radiologist, took x-rays that revealed "[v]ery slight subchondral sclerosis"[5] at Appellant's upper left arm and shoulder blade. (T. 194, 206). Dr. Udoff found "[n]o narrowing of the space" between Appellant's left arm and shoulder blade, "[n]o other abnormality" at the left shoulder joint, and "[n]o osteophyte formation."[6] (T. 194, 206). His medical impression was that Appellant had "[s]light changes of arthritis at the shoulder" but "[n]o acute abnormality." (T. 194, 206).

---

[5] "Subchondral sclerosis is an increased bone density or thickening in the layer of bone just below the cartilage." Bakker v. Astrue, No. 4:10 CV 1582 DDN, 2011 WL 3204731, at *3 n.7 (E.D. Mo. July 27, 2011).

[6] Osteophytes, also known as "bone spurs," are bony projections that develop along the edge of bones. They are primarily caused by wear-and-tear associated with osteoarthritis. See Mayo Clinic, http://www.mayoclinic.com/health/bone-spurs/DS00627 (last visited Jan. 24, 2013).

AO 72A
(Rev.8/82)

X-rays of Appellant's right shoulder showed "[s]light subchondral sclerosis and bone irregularity" at Appellant's upper right arm and shoulder blade. (T. 196, 208). Dr. Udoff noted that "[t]here may be minimal narrowing of the space" between the right arm and shoulder blade but no other abnormalities. (T. 196, 208). The doctor recorded his impression as "[m]ild arthitic change" at Appellant's right shoulder. (T. 196, 208).

On April 29, 2010, Appellant met Dr. Michael Solomon for a consultative examination. (T. 249). Appellant reported that he experiences pain every day, even when he is at rest, and that it gets worse when he is active. (Id.). He reported that his pain improves with medication, but that he was not currently taking any medication for his pain. (Id.). Appellant claimed to be able to take care of his own hygiene and to take a bath on his own, but he said that he did not cook or clean. (Id.). After conducting a physical exam, Dr. Solomon found that Appellant had a normal gait, that he was able to get on and off the examination table without assistance, but that he was "not able to reach over his head." (T. 250-51). According to Dr. Solomon's final assessment:

> Based upon the history, examination, and evaluation, [Appellant] has limited range of motion on bilateral upper extremity. Although he was complaining more about his right upper extremity he also had some limited range of motion in his left extremity. He should be able to stand and sit. He should be able to kneel, crawl, and crouch. He will have difficulty reaching over his head.

8

AO 72A
(Rev.8/82)

> He should be able to pull and push. His grip and fist are
> normal. Dexterity and manipulation are also normal. He
> should not have problems with his grip, grasp, or
> fingering. His gait is normal. His speech and hearing are
> normal. I see no need for assistive devices at this time.

(T. 251-52).

## 2. State Agency Reviews

Following Dr. Sanford's consultative examination, Dr. Margaret Wilson, a state agency consultant, completed a physical residual functional capacity assessment form on November 24, 2009. (T. 210-17). She found Appellant's statement of his functional capabilities to be "partially credible," but she gave Dr. Sanford's opinion minimum weight, reasoning that the medical evidence of record did not support it. (T. 215). In contrast to Dr. Sanford's findings, Dr. Wilson found that Appellant had no postural or manipulative limitations of any kind. (T. 212-13). She also found that Appellant could lift fifty pounds occasionally and twenty-five pounds frequently; stand and/or walk six hours in an eight-hour workday; and sit for six hours in an eight-hour workday. (T. 211). Dr. Wilson also found that Appellant was unlimited in his ability to push and pull. (Id.).

On June 14, 2010, after Dr. Solomon's examination, Dr. Charles E. Bailey completed a second physical residual functional capacity assessment form. (T. 259-266). Dr. Bailey's assessment of Appellant's exertional limitations was identical to Dr. Wilson's.

AO 72A
(Rev.8/82)

(T. 260). His assessment of Appellant's postural limitations, however, was significantly different. (T. 261). Whereas Dr. Wilson found no postural limitations, Dr. Bailey found that Appellant's climbing of ladders, ropes, or scaffolds should be limited to "occasionally" because of the decreased range of motion in Appellant's shoulders. (Id.). Dr. Bailey also found that Appellant could climb ramps or stairs, balance, stoop, kneel, crouch, or crawl "frequently."[7] (Id.). As for manipulative limitations, while Dr. Wilson found none, Dr. Bailey found that Appellant could only "frequently" reach overhead. (T. 262). Dr. Bailey concluded that Appellant was "partially credible," in that there was no medically determinable impairment to account for his shoulder pain. (T. 264).

### 3. Vocational Expert Testimony

At Appellant's hearing, a vocational expert ("VE") testified that a hypothetical individual capable of performing medium work, but who could only occasionally climb, occasionally reach overhead bilaterally, and occasionally push and pull bilaterally with the upper extremities, could not perform Appellant's past relevant work as an automobile mechanic, an industrial cleaner, or a building

---

[7]    The physical RFC form explains that a claimant can perform an activity "frequently" if he can perform that activity between one-third and two-thirds of the time spent working. A claimant can perform an activity "occasionally" if he can perform it up to one-third of the time. (T. 212, 261).

10

AO 72A
(Rev.8/82)

maintenance repairer. (T. 48). The VE testified, however, that such an individual with Appellant's age, education, and work experience could perform the jobs of hospital food service worker, counter supply worker, or bagger, each of which existed in significant numbers in the local and national economies. (T. 49).

In response to a question from Appellant's counsel regarding a hypothetical individual's ability to perform such work if that individual needed to elevate his feet for up to five hours per day, the VE responded, "That would preclude competitive employment." (Id.).

### III.
### Standard for Determining Disability

An individual is considered disabled for the purposes of disability payments if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairment must result from anatomical, psychological, or physiological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques, and must be of such severity that it precludes him from performing his previous work and, considering his age, education, and work

11

experience, any other substantial gainful work that exists in the national economy. §§ 423(d)(2)-(3), 1382c(a)(3)(B)-(C).

The claimant has the initial burden of establishing the existence of a "disability" by demonstrating his inability to perform his former type of work. Freeman v. Schweiker, 681 F.2d 727, 729 (11th Cir. 1982) (per curiam). If the claimant satisfies his burden of proving disability with respect to his former type of work, the burden shifts to the Commissioner to demonstrate that the claimant, given his age, education, work experience, and impairment, has the capacity to perform other types of jobs that exist in the national economy. Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

In evaluating a claim, the ALJ must consider whether: (1) the claimant is gainfully employed; (2) he has a severe impairment significantly limiting his ability to perform basic work-related functions; (3) his impairment meets the impairments listing; (4) he can perform past relevant work; and (5) he is disabled in light of his age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). If, at any step in the sequence, he can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. §§ 404.1520(a), 416.920(a).

12

**IV.**
**The ALJ's Decision**[8]

In her December 17, 2010, decision, the ALJ found Appellant not to have been disabled at any time from March 31, 2009, the filing date, through the date of her decision. (T. 20, 28). In particular, the ALJ found that Appellant had not been engaged in substantial gainful activity since the filing date; that he had severe impairments of diabetes, hypertension, arthritis, shoulder pain, degenerative disc disease, and alcohol abuse; but that none of his impairments met or equaled a listed impairment. (T. 22-23).

The ALJ further found that Appellant had the RFC to perform medium work with the following limitations: "the claimant is able to occasionally climb; he can perform occasional overhead reaching with the bilateral upper extremities; and he can occasionally push and pull using the bilateral upper extremities." (T. 24).

After establishing the RFC, the ALJ found Appellant unable to perform his past relevant work as an auto mechanic, an industrial cleaner, or a building maintenance cleaner. (T. 27). Considering Appellant's age, education, work experience, and RFC, however, the

---

[8] Even though the Appeals Council's decision is the final decision of the Commissioner, the Appeals Council adopted the ALJ's findings and legal conclusions regarding whether Appellant was disabled. (T. 4). Thus, the undersigned will review the reasoning expressed in the ALJ's decision. See McEwan v. Astrue, No. 3:10-CV-50-CDL-MSH, 2011 WL 3813280, at *2 n.2 (M.D. Ga. July 7, 2011).

AO 72A
(Rev.8/82)

ALJ found Appellant capable of performing the duties of a hospital food service worker, a counter supply worker, or a bagger, each of which existed in significant numbers in the local and national economies. (T. 28). Accordingly, the ALJ found Appellant not to be disabled. (Id.).

## V.
## Standard of Review

The scope of judicial review of the Commissioner's decision is limited. The Court's function is to determine if the decision is supported by substantial evidence and based upon proper legal standards. See Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The ALJ's decision will not be disturbed by the Court if, in light of the record as a whole, it appears to be supported by substantial evidence. See 42 U.S.C. § 405(g); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. MacGregor, 786 F.2d at 1053. In contrast, review of the ALJ's application of legal principles is plenary. Foote v. Chater, 67 F.3d 1553, 1558 (11th Cir. 1995).

## VI.
## Discussion

Appellant contends that the ALJ erred (1) in the credibility determination, and (2) by failing to include a function-by-function assessment in the RFC determination. [Doc. 10 at 5, 9]. Appellant

14

thus argues that a reversal and directed finding of disability, or a remand for further administrative proceedings, is warranted. [Id. at 12].

As explained below, the undersigned finds no error in the ALJ's credibility determination. Nevertheless, the undersigned finds that the ALJ erred in her RFC assessment by failing to consider the opinions of Dr. Bailey in the function-by-function analysis. Thus, **IT IS RECOMMENDED** that the ALJ's decision be **REVERSED and REMANDED** for additional proceedings consistent with this Final Report and Recommendation.

## A. Did the ALJ Err in the Credibility Determination?

Appellant first argues that the ALJ's decision should be reversed for failure to make a credibility determination in compliance with this Circuit's "pain standard." [Doc. 10 at 5]. Specifically, Appellant contends that the ALJ merely summarized the medical evidence and opinions without providing sufficient reasons for discounting Appellant's testimony. [Id. at 8-9]. Appellant also argues that the ALJ erred in finding that Appellant failed to follow his prescribed treatment. Appellant contends the ALJ erred because she did not elicit testimony about Appellant's financial condition or about any unsuccessful attempts he may have made to seek treatment that might excuse any failure to follow treatment. [Id. at 9]. With regard to Appellant's testimony regarding his daily

15

activities, Appellant argues that the ALJ erred in finding it to be "difficult to attribute that degree of limitation to [Appellant's] medical condition," contending that there was similarly no evidence to show that Appellant's limitations were *not* the result of his medical condition. [Id.]. Finally, Appellant argues that the ALJ committed error by failing to mention, or provide reasons for discrediting, Appellant's testimony that his pain measured "seven to nine" on a scale of "one to ten." [Id.].

The Commissioner responds by arguing that the ALJ's credibility finding is supported by the medical evidence of record, which contradicts Appellant's testimony of disabling pain. [Doc. 11 at 5]. As for the ALJ's finding that Appellant failed to follow his prescribed treatment, the Commissioner contends that additional testimony regarding Appellant's financial condition was not necessary because the ALJ took administrative notice that Appellant lives in Fulton County, which has a public healthcare system. [Id. at 8-9]. The Commissioner also argues that the ALJ's consideration of Appellant's daily activities was in line with this Circuit's "pain standard" and supported the ALJ's finding that Appellant's testimony regarding his pain and fatigue was not entirely credible. [Id. at 9-10].

As part of the ALJ's RFC determination, she must consider the effects of a claimant's pain and other symptoms. 20 C.F.R.

16

§§ 404.1545(a)(3), 404.1529. When statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a credibility finding. § 404.1545(e); see also Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam); SSR 96-7p, 1996 WL 374186, at *4-5 (July 2, 1996).[9]

The credibility finding includes a consideration of "all of the available evidence, including [the claimant's] history, the signs and laboratory findings, and statements from [the claimant], [his] treating or nontreating source, or other persons" regarding how his symptoms affect him. 20 C.F.R. § 404.1529(c). The ALJ must also consider the claimant's daily activities; location, duration, frequency, and intensity of pain; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of pain medication; treatment the claimant receives or has received for pain or other symptoms; any measures the claimant uses or has used to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. § 404.1529(c)(3)(i)-(vii); SSR 96-7p,

---

[9] In the Eleventh Circuit, Social Security Rulings ("SSRs") are not binding on the Court but are entitled to deference. Fair v. Shalala, 37 F.3d 1466, 1467 (11th Cir. 1994).

AO 72A
(Rev.8/82)

1996 WL 374186, at *5 (July 2, 1996); see also Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (per curiam).

If the ALJ decides not to credit a claimant's testimony, she must articulate explicit and adequate reasons for doing so that are supported by substantial evidence. Foote, 67 F.3d at 1562.

The undersigned finds no error in the ALJ's credibility determination in this case. Contrary to Appellant's argument, the ALJ did not merely summarize the record evidence; she provided reasons for her decision based on the record evidence. Appellant testified that he could not perform any kind of work because of his back, shoulder, and leg pain, and because his diabetes causes him to take frequent restroom breaks. (T. 39). In finding this testimony to be less than fully credible, the ALJ stated that "nothing in the record" would preclude Appellant from performing work as defined by the RFC. (T. 25-26).

To support her credibility finding, the ALJ contrasted Appellant's claims of debilitating pain and diabetes with the objective medical findings and opinions of Dr. Udoff, Dr. Sanford, Dr. Solomon, and Dr. Wilson. (Id.). Specifically, the ALJ noted that Dr. Udoff's x-rays only showed "slight changes of arthritis" for Appellant's left shoulder and "mild arthritic change" on his right shoulder. (T. 25). The ALJ also considered the reports of Dr. Sanford and Dr. Solomon, both of whom were examining sources, who

18

found that Appellant had a normal gait, no trouble getting on or off the examining table, and no need for assistive devices. (T. 25). In short, substantial evidence supports the ALJ's reasons for finding that the objective medical evidence failed to support the levels of pain Appellant claimed. (T. 194, 196, 200, 206, 208, 250).

With regard to Appellant's claims regarding the severity of his diabetes, the ALJ considered multiple treatment notes from Appellant's visits to Grady Hospital that showed Appellant had continually run out of his insulin and other medications and failed to follow-up on his doctors' recommendations. (T. 26, 183, 189, 218, 273). On the basis of this evidence, the ALJ inferred that Appellant's "symptoms may not have been as serious as has been alleged in connection with this application and appeal." (T. 26). The ALJ observed that Appellant's financial inability to afford his insulin and medications would not explain his failure to follow his prescribed treatment, noting that Appellant "resides in Fulton County, Georgia where there is a public health care system." (Id.). In that regard, the ALJ observed that Appellant had made use of such free services in the past and that there was no evidence that Appellant had ever been denied care from a community clinic. (Id.).

A claimant's failure to follow prescribed medical treatment without good reason will preclude a finding of disability. 20 C.F.R. § 416.930(b). But "poverty excuses noncompliance." Dawkins v. Bowen,

848 F.2d 1211, 1213 (11th Cir. 1988). Appellant argues that the ALJ should not have found him to be noncompliant with his prescribed course of treatment without first taking testimony of his financial condition or attempts to seek treatment. [Doc. 10 at 9].

After reviewing the transcript of the hearing, the undersigned finds that Appellant never testified that he could not afford insulin or any other medication, but only that he could not afford prescription eyeglasses. (T. 48). Indeed, when asked whether his doctor had prescribed anything for diabetes, Appellant replied, "I take insulin." (T. 39). And when asked about any medication he takes for pain, Appellant responded that he currently takes Motrin and another medication the name of which he could not recall. (T. 42-43).

Although the ALJ may have mischaracterized Appellant's testimony slightly when she stated that he did "not have money for medications or prescription lenses," (T. 26), the misstatement was harmless in light of the fact that there was no testimony from Appellant that he had any difficulty, financial or otherwise, in obtaining insulin, pain medication, or other treatment. Accordingly, the ALJ's failure to expand the record regarding Appellant's financial condition is not grounds for reversal, and her observation that a public health clinic was available to him and utilized by him on occasion was still valid.

AO 72A
(Rev.8/82)

Nor did the ALJ err in failing to elicit testimony about Appellant's attempts to seek treatment, since the record contains ample evidence of Appellant's visits to Grady Hospital and the Grady Diabetes Clinic, (T. 183-92, 218-34, 267-87), which the ALJ noted in her decision. (T. 26). Thus, substantial evidence supports the ALJ's observations that Appellant's noncompliance suggests that his symptoms were not as serious as he has alleged. (T. 26).

Additionally, in making the credibility determination, the ALJ properly considered Appellant's testimony about his daily activities and functional abilities. (T. 26). Although a claimant's testimony that he participates in daily activities for short durations does not necessarily disqualify him from disability payments, the ALJ may consider these activities in assessing his disability. See Majkut v. Comm'r of Soc. Sec., 394 F. App'x 660, 663 (11th Cir. 2010) (citing 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (listing claimant's daily activities as one of the relevant factors to consider in evaluating claimant's symptoms)). Here, in making the credibility determination, the ALJ stated that it was difficult to attribute Appellant's limited daily activities to his medical conditions, as opposed to the fact that his roommate/girlfriend handled the daily chores and assisted him with transportation. (T. 26).

Appellant did testify that he is unable to perform any household chores and that he "fell on [his] face" while attempting to make his bed. (T. 40). Nevertheless, as the ALJ noted, Appellant also reported that he is able to lift twenty to thirty pounds, prepare his own meals, take care of his personal hygiene, watch television and movies, and socialize with his roommate. (T. 39-41, 249). He testified that his roommate drives him, not because he is unable to drive, but because he has never had a driver's license. (T. 40). When asked whether he ever goes grocery shopping, Appellant stated that his roommate "does that," without further explanation. (T. 41-42). Thus, substantial evidence supports the ALJ's finding that Appellant's testimony regarding his daily activities, along with the medical evidence of record, was inconsistent with the disabling levels of pain Appellant testified to. See Werner v. Comm'r of Soc. Sec., 421 F. App'x 935, 938 (11th Cir. 2011) (per curiam) (finding no error in credibility determination when ALJ cited specific examples of claimant's daily activities in addition to objective medical evidence); May v. Comm'r of Soc. Sec. Admin., 226 F. App'x 955, 958-59 (11th Cir. 2007) (per curiam) (same).

Appellant challenges the ALJ's finding regarding his daily activities by contending that no evidence shows that Appellant's limitations were *not* the result of his physical impairments. [Doc. 10 at 9]. But this misstates the applicable standard for proving a

disability claim. It is Appellant's burden to bring to the Commissioner's attention evidence that "shows" he is disabled, which includes statements regarding his daily activities. 20 C.F.R. §§ 404.1512(a)-(c), 416.912(a)-(c); see also Werner, 421 F. App'x at 939 ("The question is not . . . whether [the] ALJ could have reasonably credited his testimony, but whether the ALJ was clearly wrong to discredit it." (footnote omitted)). Accordingly, the ALJ committed no error in finding Appellant's self-described limitations not to be the consequence of his medical condition.

As for Appellant's contention that the ALJ erred by failing to address his testimony that his pain registered "seven to nine" on a scale of "one to ten," [Doc. 10 at 9], the undersigned finds this argument to be without merit. The ALJ acknowledged that Appellant "testified that he has limited activities of daily living due to pain and fatigue." (T. 25). It is thus clear that the ALJ considered Appellant's testimony regarding his pain. Appellant has cited to no authority that would require the ALJ to refer to Appellant's testimony verbatim.

In sum, the ALJ articulated specific reasons for discrediting Appellant's testimony regarding the limiting effects of his physical impairments. These reasons were supported by the medical evidence of record, the opinions of the consultative examiners and state agency consultants, and Appellant's reports of his daily activities

23

and functional capabilities. The undersigned thus finds no error in the ALJ's credibility determination.

**B. Did the ALJ Err in the Function-by-Function Analysis of the RFC Assessment?**

Appellant contends that the ALJ erred in her formulation of Appellant's RFC by failing to conduct a proper "function-by-function" assessment as required by Social Security Ruling 96-8p. [Doc. 10 at 9]. Appellant argues that the ALJ's finding that he was able to perform other work was not supported by substantial evidence because the hypothetical questions posed to the VE were based in part on an erroneous RFC determination. [Id. at 11]. The Commissioner responds that the ALJ properly discussed the medical consultants' opinions in making the function-by-function assessment of Appellant's limitations and explicitly addressed each of the functions required by Social Security Ruling 96-8p. [Doc. 11 at 12]. In other words, the Commissioner argues that the ALJ's RFC finding was supported by substantial evidence in the record. [Id. at 13].

If the ALJ finds that the claimant has a medically determinable impairment, she must formulate the claimant's RFC by considering his ability to meet the "physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4), (b)-(d). In so doing, the ALJ is to consider all of the relevant evidence of a claimant's ability to do work despite his impairments. Lewis v.

Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. §
404.1545(a)). Each of a claimant's impairments must be considered,
including those that are not severe. §§ 416.920(e), 416.945; SSR 96-
8p, 1996 WL 374184, at *5 (July 2, 1996). "The RFC assessment must
first identify the individual's functional limitations or
restrictions and assess his or her work-related abilities on a
function-by-function basis . . . . Only after that may the RFC
assessment be expressed in terms of the exertional levels of work,
sedentary, light, medium, heavy, and very heavy." Washington v.
Astrue, 558 F. Supp. 2d 1287, 1300 (N.D. Ga. 2008) (quoting SSR 96-
8p, 1996 WL 374184, at *1). The ALJ's RFC assessment must also
"describe[] how the evidence supports each conclusion" and "explain
how any material inconsistencies or ambiguities in the evidence in
the case record were considered and resolved." SSR 96-8p, 1996 WL
374184, at *7.

In this case, the ALJ did consider, as the Commissioner points
out, the findings of Dr. Sanford that Appellant would be limited "in
pushing, pulling, lifting or carrying," along with Dr. Solomon's
findings that Appellant "should be able to stand and sit, kneel,
crawl, crouch, push and pull." (T. 25). The ALJ also considered the
RFC assessment of Dr. Wilson, a state agency reviewer, who found
Appellant able "to occasionally lift and carry fifty pounds and
frequently lift and carry twenty-five pounds; sit, stand and walk

25

about six hours of an eight-hour work day." (Id.). Giving substantial weight to the findings of Dr. Solomon and Dr. Wilson, the ALJ limited Appellant's RFC to medium work with occasional climbing, occasional overhead reaching, and occasional pushing and pulling. (Id.).

But the ALJ's decision did not explain why she afforded substantial weight to the opinions of Dr. Solomon and Dr. Wilson but not to Dr. Sanford, another examining source like Dr. Solomon. Rather, the ALJ stated that she gave substantial weight to Dr. Solomon's and Dr. Wilson's opinions and less weight to those of other doctors because "none of the other physicians in the medical evidence of record provided an opinion about [Appellant's] specific physical capacity." (T. 26). As mentioned above, however, Dr. Sanford's report did provide precisely such an opinion, stating that Appellant "will be limited in pushing, pulling, lifting or carrying." (T. 201). Thus, the reason given by the ALJ does not support the ALJ's decision to give less weight to Dr. Sanford's opinion.

The ALJ's decision also failed to indicate that she gave any consideration to the RFC assessment of Dr. Bailey, a state agency reviewer who submitted a physical RFC assessment more recently than did Dr. Wilson. Indeed, the ALJ's decision does not mention Dr. Bailey at all. Even though the ALJ is not required to "specifically

26

refer to every piece of evidence in [her] decision," the decision must nevertheless be sufficient to allow a reviewing court to conclude that the ALJ considered Appellant's medical condition as a whole. <u>Castel v. Comm'r of Soc. Sec.</u>, 355 F. App'x 260, 263 (11th Cir. 2009) (per curiam) (quoting <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)); <u>see also</u> <u>Foote</u>, 67 F.3d at 1561.

Moreover, "opinions from any medical source on issues reserved to the Commissioner must never be ignored." SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996). While Dr. Bailey's finding of exertional limitations was identical to Dr. Wilson's, the two reports differed significantly with respect to Appellant's postural limitations. Dr. Wilson found no postural limitations, (T. 212), but Dr. Bailey determined that Appellant should be limited to balancing, stooping, kneeling, crouching, crawling, and climbing ramps or stairs "frequently," and climbing ladders, ropes, or scaffolds "occasionally." (T. 261). Because the only postural limitation in the ALJ's RFC determination was that "[Appellant] is able to occasionally climb," Dr. Bailey's finding of additional limitations is a material inconsistency in the record that the ALJ should have resolved. Substantial evidence thus does not support the ALJ's assessment of Appellant's RFC. <u>See</u> <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1179 (11th Cir. 2011) ("It is possible that the ALJ

27

considered and rejected these two medical opinions, but without clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence."); Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam) ("In assessing the medical evidence in this case, the ALJ was required to state with particularity the weight he gave the different medical opinions and the reasons therefor."); 20 C.F.R. § 404.1527(e)(1)(ii) ("Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . ."); SSR 96-8p, 1996 WL 374184, at *7 ("The adjudicator must . . . explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.").

The ALJ posed hypothetical questions to the VE based, in part, upon an erroneous RFC assessment formulated without properly assessing and weighing the opinions of Drs. Bailey and Sanford. Therefore, substantial evidence does not support the ALJ's finding that Appellant could perform other work in the local and national economies. See Phillips v. Barnhart, 357 F.3d 1232, 1240 n.7 (11th Cir. 2004) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." (quoting Jones v. Apfel, 190

AO 72A
(Rev.8/82)

F.3d 1224, 1229 (11th Cir. 1999))); <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam).

Accordingly, the ALJ's failure to resolve the above inconsistency in medical source opinions of Appellant's postural limitations was error in light of the fact that the ALJ's RFC assessment contained a lesser degree of limitation than the RFC assessment of the overlooked medical source. The ALJ should have addressed these opinions in formulating the RFC but did not. **IT IS THUS RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED**. On remand, the ALJ should re-assess Appellant's RFC in light of all the relevant evidence of record, explain the weight given to the different medical opinions, and resolve any material inconsistencies or ambiguities in the evidence, in accordance with this Circuit's case law and the applicable regulations. <u>See Winschel</u>, 631 F.3d at 1179; <u>Sharfarz</u>, 825 F.2d at 279; 20 C.F.R. § 404.1527; SSR 96-8p, 1996 WL 374184, at *7.

## VII.
### Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that the decision of the Commissioner finding Appellant not to be disabled be **REVERSED** and **REMANDED** for further proceedings consistent with this Final Report and Recommendation.

AO 72A
(Rev.8/82)

**SO REPORTED AND RECOMMENDED**, this 6th day of February, 2013.


                                  s/ E. Clayton Scofield
                              E. CLAYTON SCOFIELD III
                              UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)